Conrad CHALICK, Individually and as General Administrator and Administrator Ad Prosequendum of the Estate of Michael Ellis Chalick, Plaintiff,

v.

COOPER HOSPITAL/UNIVERSITY MEDICAL CENTER, Raja Salem, M.D., Chin–Wei Huang, M.D., Edward G. Moss, M.D., Robert M. White, M.D., University Radiology Services,and John and Jane Does 1–50, Defendants.

No. CIV. 99–1064(SMO).

United States District Court,
D. New Jersey.

March 2, 2000.

Benjamin Folkman, Folkman Law Offices, P.C., Cherry Hill, NJ, for plaintiff.

Debra S. Hantman, Parker, McCay & Criscuolo, Marlton, NJ, for Defendants Cooper Hospital/University Medical Center, Raja Salem, M.D., Chin–Wei Huang, M.D.

## OPINION

KUGLER, United States Magistrate Judge

This matter comes before the Court upon Plaintiff Conrad Chalick's Motion to Amend the Complaint. Plaintiff seeks to replace a fictitiously-named John Doe defendant with Richard Burns, M.D., pursuant to Fed. R.Civ.P. 15(c). It is uncontested that the original complaint was filed within the limitations period, but the request to add Dr. Burns as a defendant was made after the limitations period expired, and that, therefore, the question before this Court is wheth-

---

er the addition of Dr. Burns relates back to the filing of the original complaint under Fed.R.Civ.P. 15(c). Because, as discussed below, the court finds that defendants' violations of Fed.R.Civ.P. 26(a) preclude them from claiming that Dr. Burns did not receive notice and was unaware that he was a proper defendant, plaintiff's motion shall be granted.

## I. *BACKGROUND*

Plaintiff initiated this medical malpractice action by filing a complaint in this court on or about March 9, 1999, claiming diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff named Cooper Hospital–University Medical Center and University Radiology Services, P.A., as defendants, along with four individual physicians: Raja Salem, M.D., Chin–Wei Huang, M.D., Edward G. Moss, M.D., and Robert M. White, M.D. Plaintiff also named as defendants John Does 1–50 and Jane Does 1–50, whom plaintiff identified as:

> individuals, corporations, partnerships, associations, joint ventures or other legal entities whose identities are unknown at present, but who were duly licensed nurses and/or licensed practical nurses and/or head nurses and/or nursing supervisors of Cooper Hospital–University Medical Center in May of 1997 at the time that Michael Ellis Chalick was a patient at Cooper Hospital–University Center, were nurses and/or nursing supervisors and/or staff nurses employed by the defendant and/or agents of the defendant Cooper Hospital–University Medical Center to provide nursing care and/or treatment to the plaintiff's decedent, Michael Ellis Chalick, for certain physical conditions, were duly licensed physicians engaged in the practice of their profession at Cooper Hospital–University Medical Center, Camden, New Jersey and who undertook to treat and/or care for Michael Ellis Chalick for certain physical conditions and who failed to exercise ordinary care and/or failed to exercise the degree of care and skill commonly exercised by nurses and/or physicians in like cases or were administrators responsible for the implementation or supervision of medical service delivery systems, which in-

dividuals at all times relevant hereto were the agents, servants and/or employees or otherwise authorized to act on behalf of or in concert with the defendant Cooper Hospital–University Medical Center, acting within the course and scope of their employment and/or retention.

(Complaint, ¶ 11).

Plaintiff alleged that defendants were responsible for the death of plaintiff's decedent, Michael Ellis Chalick, who was admitted to Cooper Hospital–University Medical Center on May 30, 1997, following a parachuting accident. Plaintiff claims in the First Count that "all defendants failed to exercise ordinary care and/or failed to exercise the degree of care commonly exercised by physicians, nurses or professionals in like cases," and that this failure constituted negligence, carelessness, and/or recklessness which was the proximate cause of plaintiff's injuries. (Complaint, ¶¶ 13, 14). Michael Chalick died on May 31, 1997. (Complaint, ¶ 12).

The Second Count of the complaint is directed to defendant Cooper Hospital, and the Third and Fourth Counts are pled as a survival action and wrongful death action, respectively.

On March 31, 1999, plaintiff filed an amended complaint to correct an error in the caption.

There is no dispute that the named defendants were timely served. Defendants University Radiology and Drs. White and Moss [hereinafter referred to as the "University Radiology defendants"] filed their answer to the amended complaint on or about May 5, 1999. Defendants Cooper Hospital and Drs. Salem and Huang [hereinafter referred to as the "Cooper Hospital defendants"] filed their answer to the amended complaint on or about May 19, 1999.

### A. Rule 26(a) Disclosures

On or about June 2, 1999, the Cooper Hospital defendants served plaintiff with their Rule 26(a) disclosures. With respect to persons with relevant knowledge, defendants identified the four individual physician defendants, along with five other physicians or nurses, including Dr. Richard Burns.[1] (*See*

---

1. The full response of the Cooper Hospital defendants was:

Letter 6/2/99, attached as Ex. "F" to Kopelson Certif.). Defendants provided nothing other than Dr. Burns' name; they did not provide Dr. Burns' address or the basis of his knowledge, as is required under Fed.R.Civ.P. 26(a)(1)(A).

On or about June 14, 1999, the University Radiology defendants served plaintiff's counsel with their Rule 26(a) disclosures, also identifying Dr. Richard Burns as an individual with relevant knowledge.[2] (*See* Letter 6/14/99, attached as Ex. "G" to Kopelson Certif.). These defendants also failed to provide the information required by Rule 26(a)(1)(A), other than Dr. Burns' name.

### B. Interrogatories and Depositions

Plaintiff's counsel then served interrogatories and deposition notices. On or about July 14, 1999, Defendant Dr. Huang responded to plaintiff's interrogatories. Form C(3) Interrogatory No. 15 stated in relevant part:

15. State the names and addresses of all consultants or other physicians who saw, examined and treated plaintiff at your request for the condition forming the basis of the complaint, . . . .

Defendant Huang responded: "No consultations per se, however, thoracic and lumbar spine x-rays were ordered and trauma attending Dr. Burns was notified of the change in patient's condition." (*See* Answers to Plaintiff's Form C, C(3), and Supplemental Interrogatories on Behalf of Defendant Chin–Wei Huang, M.D., attached as Ex. "K" to Kopelson Certif.).

In addition, in response to Supplemental Interrogatory No. 2, which asked for the

identities of all persons known to fit the description of the John Doe defendants, Defendant Huang objected to the interrogatory, but referred plaintiff to his response to Form C Interrogatory No. 4, which identified Dr. Richard Burns, among others, as persons with relevant knowledge. (*See* Pl. Brief, at 4–5).[3]

On or about August 18, 1999, defendant Dr. Salem served plaintiff with responses to interrogatories. In response to Form C Interrogatory No. 4, Dr. Salem also identified Dr. Richard Burns as a person with relevant knowledge. (*See* Answers to Plaintiff's Form C, C(3), and Supplemental Interrogatories on Behalf of Defendant Raja Salem, M.D., attached as Ex. "O" to Kopelson Certif.). He did not, however, identify Dr. Burns in response to Form C(3) Interrogatory No. 15.

Plaintiff's counsel initially scheduled depositions of the individual doctor defendants for August 24, 1999. Those depositions were then rescheduled to October, 1999, then to November, 1999, and again to December, 1999. It was not until the deposition of Defendant Dr. Salem on December 10, 1999, that plaintiff claims he first became aware that he had a claim against Dr. Burns.

It was from Dr. Salem's testimony that plaintiff learned that Dr. Burns was a trauma surgeon at Cooper Hospital University Medical Center who filled in as attending physician in the trauma unit for Dr. Salem during the early morning hours of May 31, 1997, while Dr. Salem was in the operating room. (*See* Salem Dep., 12/10/99, attached as Exhibit "W" to Kopelson Certif., at 20:8–21:5). Dr.

---

Persons with relevant knowledge: Dr. Raja Salem, Dr. Chin–Wei Huang, Dr. Edward Moss, Dr. Robert White, Tom Levin, RN, Robert Mar, Jr., RN, Dr. Richard Burns, Dr. Lawrence Deutsch, Dr. Philip Wry, and nurses names to be supplied.
(*See* Letter 6/2/99, attached as Ex. "F" to Kopelson Certif.).

**2.** The full response of the University Radiology defendants was:
Robert White, M.D.
Edward Moss, M.D.
Rajah Salem, M.D.
Chin–Wei Huang, M.D.
Laurence Deutsch, M.D.
Philip Wry, M.D.
Richard Burns, M.D.

Any and all other individuals named in the Cooper Hospital records who may have discoverable information about the care and treatment of the decedent and history of the decedent's injury.
(*See* Letter 6/14/99, attached as Ex. "G" to Kopelson Certif.).

**3.** Although plaintiff attached Dr. Huang's interrogatory responses as Exhibit "K" to the Kopelson Certification, the response to Form C Interrogatory No. 4 was missing from the attachment. The citation to Dr. Huang's response to this interrogatory is taken directly from plaintiff's brief. There is no indication that the response did anything to explain the nature of Dr. Burns' knowledge, other than to merely identify him by name as a person with relevant knowledge.

Salem testified that he asked Dr. Burns to check on Michael Chalick in response to his complaints of pain, tingling, and numbness, that Dr. Burns did check on Michael Chalick, made a notation of Mr. Chalick's complaints on his chart, and reviewed Mr. Chalick's x-rays with Dr. Salem. (*Id.*, at 17:4–21:15). Dr. Salem further testified that Dr. Burns discussed Michael Chalick's condition with Dr. Salem on the morning of May 31, 1997. (*Id.*, at 18:16–19:17).

As a result of this testimony, on or about December 27, 1999, plaintiff filed this motion to amend the amended complaint to add Richard Burns, M.D., as a defendant, conceding that the statute of limitations ran on plaintiff's claim against Dr. Burns, but claiming that the amendment relates back to the filing of the original Complaint under Fed. R.Civ.P. 15(c). In the proposed Second Amended Complaint, plaintiff identifies Dr. Burns as "an individual licensed to practice medicine in the State of New Jersey, who at all times relevant herein maintained a practice of medicine at Three Cooper Plaza, Suite 411, Camden, New Jersey." (Proposed Second Amended Complaint, at ¶ 8). Plaintiff further alleges in the First Count that "[a]t all relevant times defendants Salem, Huang, Moss, Burns, and White were duly authorized agents, servants, workmen or employees of defendant Cooper Hospital–University Medical Center, acting within the course and scope of their employment." (*Id.*, at ¶ 11).

All other allegations in the proposed Second Amended Complaint remain the same.

The Cooper Hospital defendants filed a brief in opposition to plaintiff's motion. In their opposition, the Cooper Hospital defendants argue that Dr. Burns did not receive actual or constructive notice of this lawsuit, and did not have reason to know that plaintiff intended to sue him until he received plaintiff's motion to amend.

Plaintiff was given an extension until January 26, 2000, to file a brief in reply to defendants' opposition to this motion.

## II. RELATION BACK OF AMENDMENTS

Amendments to pleadings are to be "freely given when justice so requires" under Rule 15(a), Federal Rules of Civil Procedure. The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. *See Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir.1990); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). The United States Supreme Court stated that amendments to pleadings should be granted under Rule 15(a) except in certain limited circumstances— "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

An amendment adding a claim against a party after the statute of limitations has expired is permitted if it satisfies the standards of *Foman v. Davis* and it relates back to the date of filing of the original complaint under Rule 15(c). Rule 15(c) provides:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

Replacing a fictitious name with an identified defendant amounts to "changing a party" within the meaning of subsection (c)(3). *See Cruz v. City of Camden*, 898 F.Supp.

1100, 1106 (D.N.J.1995) (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir.1977)). Under the language of the rule, if relation back is permitted under either New Jersey law (Rule 15(c)(1)),[4] or federal law (Rule 15(c)(3)), plaintiff's motion will be granted. *See Jordan v. Tapper*, 143 F.R.D. 575, 580–81 (D.N.J.1992), *appeal denied*, 143 F.R.D. 567 (D.N.J.1992).

Because this court finds that as a result of the defendants' failure to comply with their obligations under Rule 26(a), the interests of justice permit relation back under federal law, the court need not reach the issue of whether New Jersey law also permits relation back.

### A. Relation Back Under Federal Law

Rule 15(c)(3) requires that three conditions be satisfied before recognizing relation back: (1) the basic claim must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint; (2) the party to be brought in must have received such notice of the institution of the action within 120 days of the filing of the complaint that it will not be prejudiced in maintaining a defense on the merits; and (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it. *See Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457–58 (3d Cir.1996). "Rule 15(c) does not require that a plaintiff actually amend his complaint within the Rule 4(m) period; it speaks only of notice, lack of prejudice, and reason to know of a mistake within that time." *Id.* at 458.

There is no dispute that the claim against Dr. Burns arose out of the conduct set forth in the original complaint. The questions are therefore whether, within 120 days from the filing of the complaint, Dr. Burns was put on such notice of this action that he will not be prejudiced and should have known that he was a proper defendant but for a mistake of identity. The effective notice period ended on July 29, 1999.[5]

These relation back conditions are subject to equitable considerations. In *Bechtel v. Robinson*, 886 F.2d 644 (3d Cir.1989), the Third Circuit held that a defendant, by virtue of misleading the plaintiff as to the proper party to sue, was equitably estopped from asserting he did not receive notice under Rule 15(c). The court examined the principles of equitable estoppel under Delaware law and found that they prevented the defendant from relying upon the statute of limitations defense.

> While we recognize that "the statute of limitations is important to a defendant to protect it from the unfair surprise of a stale claim," in this case any surprise to [the defendant] is not "unfair." It was through [the defendant's] own conduct, by misleading the appellants as to the proper party to sue, that appellants were forced to bring a stale claim against him.

886 F.2d at 650. *See also Urrutia v. Harrisburg County Police Dept.*, 91 F.3d at 458–59 (suspending Rule 15(c)(3) notice period while district court considers *pro se* party's *in forma pauperis* petition).

In medical malpractice wrongful death cases such as this, it is the defendants who possess the indisputably relevant information about who the decedent's treating physicians were during the decedent's stay in the hospital. The only information that plaintiffs often have at the time of filing a lawsuit are medical records and charts that contain undecipherable handwriting and signatures.[6]

---

4. There has been no contention that any state other than New Jersey provides the rule of decision on the statute of limitations.

5. There is a question about whether the 120–day period for service of process began to run from the date of filing of the original complaint on March 9, 1999, or from the date of filing of the amended complaint on March 31, 1999. Plaintiff and defendants appear to agree that July 29, 1999, is the determinative date. At the time plaintiff filed his amended complaint, no defendant had yet filed a responsive pleading to the original complaint, and there is no indication that plaintiff attempted to serve the original complaint upon defendants. To give plaintiff the benefit of the doubt, the court will use the later date of March 31, 1999, to begin the 120–day period for purposes of Fed.R.Civ.P. 15(c)(3), which makes the period end on July 29, 1999.

6. Dr. Richard Burns' notes and signature appear in Michael Chalick's medical records—specifically, a progress notation made at 4:30 a.m. on May 31, 1997 on Michael Chalick's chart—but plaintiff argues, and the court agrees, that the signa-

It is the obligation of defendants to provide plaintiff with the identities and roles of the decedent's treating physicians so that the case can be decided on the merits. Simply put, defendants must tell a plaintiff who did what, and when, with regard to plaintiff's care and treatment. Just as important, however, is defendants' obligation to provide this information early in the action pursuant to Rule 26(a).

Rule 26(a) obligations are clear and established in this District. With respect to individuals with relevant knowledge, the rule provides as follows:

> (1) **Initial Disclosures.** Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to other parties:
>
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, *identifying the subjects of the information;* ...

Fed.R.Civ.P. 26(a) (emphasis added). While some courts chose to opt-out of certain provisions of the 1993 amendments to Rule 26, this court adopted the new Rule 26(a) in its entirety. *See* Local Civil Rule 26.1(b) ("The requirements currently codified in Fed. R.Civ.P. 26(a) and (f) pertaining to required disclosures, meetings of parties, and submission of discovery plans, shall apply to all civil cases filed after December 1, 1993 ...."). This District chose to follow Rule 26(a), rather than craft a customized local version, "because it concluded that the federal civil rules generally provided a workable balance between flexibility allowed to the bar and control centered in the Court, particularly through the United States Magistrate Judge." *Id.*, comment.

The voluntary disclosure provision of Rule 26(a) that was amended in response to the Civil Justice Reform Act of 1990 was a dramatic and unprecedented shift in federal discovery practice—a shift that was necessitated by the progressively increasing undue time and expense spent on obtaining undisputedly relevant discovery, which was a waste of the litigants' time, as well as that of the court in enforcing the federal discovery rules against recalcitrant parties.[7] This District does not take Rule 26(a) lightly. *See* Local Civil Rule 26.1, comment. The purpose of voluntary disclosures is to streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs. The requirement of the identification of persons with relevant knowledge in Rule 26(a)(1)(A), along with the subject matter of their knowledge, serves the important purpose of assisting the parties in deciding whom to depose. Fed.R.Civ.P. 26(a) advisory committee's note, 1993 amendments.

Particularly in medical negligence cases, Rule 26(a) disclosure requirements should eliminate what has degenerated into a ritualistic jousting over who should be a defendant. Strict enforcement of the rule leads to early identity of the proper parties so that the litigants can focus on the real issue—who, if anyone, was negligent. This aids defendants as well as plaintiffs, for consistent with the obligations under Rule 11, plaintiff's counsel will be expected to dismiss those defendants who had no role in the care and treatment of the plaintiff.

Litigants are warned not to "indulge in gamesmanship with respect to the disclosure obligations." Advisory Committee Notes, Rule 26(a). To curb such "gamesmanship," Rule 37(c)(1) provides the court with broad latitude in fashioning an appropriate sanction for failure to provide the information required under Rule 26(a):

> (1) A party that without substantial justification fails to disclose information re-

---

ture was illegible. (*See* May 31, 1997 Progress Note, attached as Exhibit "V" to Kopelson Certif.).

**7.** *See* Issues and Changes Regarding Proposed Amendments to Federal Rules of Civil Procedure, May 1, 1992, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, 146 F.R.D. 401, 527, 628–29; *see also* Local Civil Rule 26.1, comment (stating that the 1993 amendments were "intended to achieve the [Civil Justice Reform Act's] goal of reducing cost and delay particularly in response to what has been perceived as abuses of the discovery process").

quired by Rule 26(a) or Rule 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

Fed.R.Civ.P. 37(c)(1). This provision is self-executing; there is no need for a litigant to make a motion to compel. Advisory Committee Notes, Fed.R.Civ.P. 37(c). Nor does the imposition of a sanction under this provision require a violation of a court order as a prerequisite.

The automatic enforcement power of Rule 37(c)(1) has been well documented since its revision in 1993. *See, e.g., Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'"); *Vance v. United States of America*, 182 F.3d 920 (6th Cir.1999) ("It is well-established that Fed.R.Civ.P. 37(c)(1), enacted in 1993, mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified."); *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 and n. 6 (7th Cir.1998) (holding that Rule 37(c)(1) provides enforcement mechanism for violations of Rule 26(a) and that "the district court is not required to fire a warning shot"); *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir.1998) ("[T]he new rule [37(c)(1)] clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.").

The sanctions available to this court under Rule 37(c)(1) are those set forth in subparagraphs (A), (B) and (C) of subdivision (b)(2), which are:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; ...

Fed.R.Civ.P. 37(b)(2).

With these rules in mind, the court makes the following findings. Defendants failed to comply with their disclosure obligations under Rule 26(a)(1)(A), because they provided no information about Dr. Burns other than his name. They did not provide the basis of his knowledge, as required by the rule. Had they complied with their Rule 26(a)(1)(A) obligations, plaintiff would have been duly informed by June 2, 1999, that Dr. Burns was one of the physicians responsible for the care of Michael Chalick on the day that he died.

Defendants have not provided "substantial justification" for their failure to explain the role of Dr. Burns, nor was this failure harmless. The prejudice resulting to plaintiff is obvious. If he had received that information on June 2, 1999, plaintiff would reasonably have had the time and information necessary to add Dr. Burns as a defendant and provide notice to him before July 29, 1999. That not only would have allowed Dr. Burns to participate in the litigation from the outset, but it also would have prevented defendants from arguing now that Dr. Burns did not receive notice within the Rule 15(c) period. That prejudice also extends to the court, for defendants' refusal to provide plaintiff with the information necessary to determine who the physicians were who were responsible for the care of Michael Chalick has hindered the efficient management of the pretrial process with which the court is charged under Rule 16 and has delayed a resolution of this action

on its merits. Defendants' failure to comply with Rule 26(a), along with the resulting prejudice, warrants a sanction.

The court further finds that an appropriate sanction is to refuse to allow defendants to rely on their claim that Dr. Burns, within the Rule 15(c) period, did not receive notice of the action and did not have reason to believe that he would be a named defendant.[8] *See* Fed.R.Civ.P. 37(b)(2)(B); *Bechtel v. Robinson*, 886 F.2d at 652 (applying equitable estoppel to bar defendant from claiming that he did not receive notice within the limitations period). Dr. Burns cannot claim to have suffered prejudice from his late addition to this lawsuit when the defendants, with whom Dr. Burns apparently shares an identity of interest, had reason to know as early as June, 1999, by virtue of the John Doe paragraph in the complaint, that plaintiff intended to name all of the physicians who treated Michael Chalick on the day before and morning of his death, and that Dr. Burns was one of those physicians.[9]

The chosen sanction not only is appropriate under Rules 26(a) and 37(c)(1), but it is also consistent with equitable principles and with New Jersey policy underlying its statutes of limitations. "Relation back is intimately connected with the policy of the statute of limitations." *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d at 459 (quoting Fed.R.Civ.P. 15(c), advisory committee's note). New Jersey courts have relaxed strict adherence to the statute of limitations and recognized relation back in circumstances where plaintiff's delay in substituting a John Doe defendant has been occasioned by defendants' incomplete or misleading discovery responses. *See, e.g., Brown v. Kennedy Memorial Hosp.*, 312 N.J.Super. 579, 588, 711 A.2d 1370 (App.Div.1998) (allowing plaintiff to amend complaint where defendant failed to specifically answer interrogatories that asked for the names of all treating physicians).

The court recognizes the apparent unfairness of the adverse effects of this sanction falling upon Dr. Burns, rather than those defendants whose discovery violations occasioned the sanction. However, an identity of interest between original defendants and a newly added defendant has been found to be a sufficient basis to impute notice to the added defendant and justify his joinder in the case under Rule 15(c)(3). *See, e.g., In re Tutu Wells Contam. Litig.*, 846 F.Supp. 1243, 1260 and n. 6 (D.Virgin Islands 1993) (notice under Rule 15(c)(3) was imputed to wholly-owned subsidiary of named defendant where defendants shared same addresses and officers "and last, but by no means least, the corporations are represented by the same attorneys"); *Advanced Power Systems, Inc. v. Hi–Tech Systems, Inc.*, 801 F.Supp. 1450, 1456 (E.D.Pa.1992) ("[N]otice may be imputed to parties added after the limitations period expired when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.");

---

**8.** The fact that plaintiff had knowledge on July 14, 1999, of Dr. Huang's interrogatory response in which he stated that "trauma attending Dr. Burns was notified of the change in patient's condition" does not undo the prejudice that defendants caused by their earlier Rule 26(a) violation, nor does plaintiff's delay in deposing any of the defendant doctors change the sanction which this court finds is an appropriate remedy for defendants' discovery violations. *See Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d at 1197 (Becker, J., concurring in part, dissenting in part) ("[T]his Court has repeatedly stated outright that unexcused delay unaccompanied by real detriment to the defendant or to the judiciary does not constitute undue delay.").

**9.** Even if the Cooper Hospital defendants were allowed to rely on their claim that Dr. Burns suffered prejudice, the court finds that defendants' burden of showing actual prejudice has not been met. *See Urrutia v. Harrisburg County Police Dept.*, 91 F.3d at 461 ("The prejudice must be actual, not hypothetical."); *Bechtel v. Robinson*, 886 F.2d at 652 (defendant must show that it was unfairly denied opportunity to present facts or evidence which it would have presented had amendment been timely). Any lost opportunity of Dr. Burns to present facts or evidence was not unfair, given the Cooper Hospital defendants' knowledge of his role in Michael Chalick's care and the common interest of Dr. Burns and the Cooper Hospital defendants, who presumably have been engaged in the preparation of a defense that will not differ significantly from that which Dr. Burns will present. In any event, there has been no claim of loss of witness testimony or other evidence as a result of the delay in naming Dr. Burns, and the court will permit the parties adequate time to exchange discovery regarding Dr. Burns.

*Heinly v. Queen,* 146 F.R.D. 102 (E.D.Pa. 1993) (finding that knowledge sufficient to satisfy Rule 15(c)(3) may be imputed to a new defendant through the attorney representing the original defendants); 6A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1499, at 143 (2d ed.1990).

The fact that the Cooper Hospital defendants made arguments on Dr. Burns' behalf, plaintiff's undisputed allegation in the proposed Second Amended Complaint that Dr. Burns was an authorized agent or employee of Cooper Hospital, and defense counsel's suggestion that Dr. Burns would "share counsel" (*see* Def. Brief, at 9) with the Cooper Hospital defendants, lead to a reasonable conclusion that Dr. Burns shares an identity of interest with the defendants opposing this motion.

Because of the identity of interest between Dr. Burns and the Cooper Hospital defendants, the ramifications of the named defendants' failure to timely identify Dr. Burns' role in Michael Chalick's care necessarily fall upon all those who share that interest. This was implicit in the holdings of *Bechtel* and *Brown,* and it is neither unfair nor inequitable.[10]

Accordingly, the court finds that a sanction under Rule 37(c)(1) is warranted by defendants' violation of their disclosure obligations under Rule 26(a), and the sanction of precluding the Cooper Hospital defendants from relying upon their claims of prejudice and lack of notice on behalf of Dr. Burns is consistent with Rule 37(b)(2)(B) and with the policies underlying both federal and New Jersey law on relation back, as demonstrated by such cases as *Bechtel* and *Brown.* The court finds the conditions of Rule 15(b)(3) satisfied, and further holds that the proposed amendment satisfies the standards of *Foman v. Davis* for amending pleadings. Although plaintiff was primarily responsible for a five-month delay in ascertaining the role of Dr. Burns after learning his identity from Dr. Huang's interrogatory response, that delay is not "undue," considering the limited impact it will have upon the trial schedule and the absence of prejudice to defendants. *See Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 939 (3d Cir.1984) (undue delay refers to delay in proceedings, not delay in amending pleadings). There has been no showing of bad faith or dilatory motive on the part of plaintiff, and, as discussed above, there can be no reasonable claim that Dr. Burns suffered "undue prejudice" as a result of the amendment. For these reasons, plaintiff's motion to amend shall be granted, in accordance with the conditions set forth in the accompanying Order.

### *ORDER*

THIS MATTER having been brought before the Court upon motion by Benjamin Folkman, Esquire, attorney for plaintiff, for an Order granting leave to file a Second Amended Complaint naming Richard Burns, M.D., as a defendant; and the Court having considered the moving papers, and the opposition thereto; and for the reasons expressed in this court's Opinion issued today;

IT IS this **2nd day of March, 2000** hereby

**ORDERED** that plaintiff's motion is **GRANTED.** Plaintiff shall file the Second Amended Complaint within seven days from the date of this Order. Plaintiff shall promptly serve the Second Amended Complaint upon Dr. Burns and conduct any and all discovery regarding Dr. Burns. The pretrial deadlines set forth in the Amended Scheduling Order of January 12, 2000, shall remain in effect. Should any party desire an extension of any of the pretrial deadlines on the basis of discovery regarding Dr. Burns, that party shall contact the court and show good cause for an extension.

---

10. Moreover, the chosen sanction merely prevents the Cooper Hospital defendants from asserting that Dr. Burns was prejudiced as a result of not timely receiving notice of plaintiff's claim. Since the only assertions made on Dr. Burns' behalf were those made by the Cooper Hospital defendants, the application of the sanction works to render plaintiff's arguments unopposed and, therefore, justifies a finding that the conditions of Rule 15(c)(3) are satisfied. This opinion does not purport to address any defenses that Dr. Burns may have based upon the statute of limitations.